UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: SHEILA ROCHELLE PETERSON** | CASE NO. 09-11475-DWH |
| | CHAPTER 13 |
| SHEILA ROCHELLE PETERSON | PLAINTIFF |
| VERSUS | ADV. PROC. NO. 10-01162-DWH |
| GREEN TREE SERVICING, LLC | DEFENDANT |
| | |
| **IN RE: TANEKIA L. SHOLAR** | CASE NO. 05-15388-DWH |
| | CHAPTER 13 |
| TANEKIA L. SHOLAR | PLAINTIFF |
| VERSUS | ADV. PROC. NO. 10-01118-DWH |
| GREEN TREE SERVICING, LLC | DEFENDANT |

OPINION

On consideration before the court are amended complaints filed by Sheila Rochelle Peterson, (hereinafter "Peterson or debtor") and Tanekia L. Sholar, (hereinafter "Sholar or debtor"), against Green Tree Servicing, LLC, (hereinafter "Green Tree or defendant"); answers to said amended complaints and affirmative defenses having been filed by Green Tree; on proof in open court; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to these proceedings pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157, in addition to the General Order of Reference

entered by the United States District Court for the Northern District of Mississippi on July 27, 1984.

The court is of the opinion that both of these proceedings are core proceedings as defined in 28 U.S.C. § 157(a)(2)(A), (B), and (O). The parties have expressly consented to this court entering a final order in the Peterson adversary proceeding. However, Green Tree has not consented to this court entering a final order in the Sholar adversary proceeding, specifically raising the decision rendered by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct 2594, 180 L.Ed.2d 475 (2011). Both complaints focus on events which occurred during the administration of the debtors' bankruptcy cases and seek relief that is available exclusively through the application of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Regardless, if this court is incorrect in its determination that the Sholar proceeding is a core proceeding, then it recommends that this decision be considered as proposed findings of fact and conclusions of law by any appellate court should an appeal be taken.

II.

In summary, the amended complaints against Green Tree assert the following:

a. Green Tree violated the automatic stay, engaged in fraudulent conduct, abused the bankruptcy process, and/or otherwise violated applicable law.

b. Green Tree acted fraudulently and illegally in misrepresenting the amount of the debtors' pre-petition arrearages by intentionally omitting pre-petition earned but not collected interest ("ENC") from the proofs of claim that it filed in each bankruptcy case. It then collected this interest by misapplying post-petition regular monthly maintenance payments which reduced the allocation of funds to the loans' principal.

c. Green Tree penalized the debtors for the administrative practices of the Chapter 13 trustees by booking payments received by Green Tree from the trustees on the

        date of receipt, rather than on the contractual due dates, set forth in the respective loan agreements.

d.     Green Tree misapplied one or more payments received from the Chapter 13 trustees in each case.

e.     Green Tree's actions constituted violations of the automatic stay found in § 362(a) of the Bankruptcy Code.

f.     Green Tree should be enjoined from engaging in all acts found to be fraudulent, illegal, and/or abusive of the bankruptcy process.

g.     The debtors should be awarded actual damages, punitive damages, as well as, their reasonable costs of litigation and attorney fees. In addition, the debtors should be awarded monetary sanctions for each act or omission by Green Tree which constitutes a violation of the automatic stay.

### III.

In the pre-trial orders, the parties stipulated to the following:

<u>Peterson Adversary Proceeding</u>:

a.     Sheila R. Peterson is indebted to Green Tree under a Manufactured Home Retail Installment Contract & Security Agreement dated March 5, 1999 (the "Contract"), reflecting a debt in the principal amount of $33,975.00. A manufactured home, rather than real property, stood as security for the debt.

b.     The Manufactured Home Retail Installment Contract & Security Agreement provided for an interest rate of 8.5% per annum and required Ms. Peterson to make 360 payments of $282.17 per month as the contractual amount of the Contract.

c.     The Manufactured Home Retail Installment Contract & Security Agreement provided for the payment of daily simple interest on the outstanding unpaid principal balance of the loan.

d.     Sheila R. Peterson filed her Chapter 13 Voluntary Petition on March 24, 2009.

e.     Green Tree is a secured creditor in Ms. Peterson's Chapter 13 bankruptcy.

f.     The meeting of creditors in Ms. Peterson's bankruptcy was held on May 8, 2009.

g.  Ms. Peterson's Chapter 13 plan was confirmed by the Court on May 27, 2009. The plan provided for post-petition monthly mortgage payments in the amount of $353.89, including escrow, and pre-petition arrearage monthly payments in the amount of $44.09 to Green Tree.

h.  Pursuant to her confirmed plan, the continuing monthly mortgage amounts owed to green Tree are paid by Ms. Peterson's bankruptcy Trustee, or paid "through the plan."

i.  Ms. Peterson filed this adversary proceeding on September 9, 2010.

j.  Green Tree segregated the amount it reported as an arrearage into a bankruptcy "bucket" and pre-petition arrearage payments made by Ms. Peterson's Trustee were credited to the arrearage.

k.  During part of Ms. Peterson's Chapter 13 bankruptcy proceeding, Green Tree charged Ms. Peterson's account simple interest based on the date that it received post-petition mortgage payments from the Trustee, rather than the date that such payments were contractually due.

l.  Green Tree voluntarily instituted a payment reversal and reallocation process (the "Reallocation Process") for accounts in bankruptcy in the State of Mississippi.

m.  After reversing from the payment history all post-petition mortgage payments made by Ms. Peterson's Trustee, Green Tree re-applied those payments as if received on the contractual due date under Ms. Peterson's loan, as reflected in the payment history.

n.  Peterson is an adult resident citizen of Oktibbeha County, Mississippi.

o.  Peterson and her mother, Mary E. Wilson, executed a Manufactured Home Retail Installment Contract and Security Agreement (the "Contract") on March 5, 1999 to finance the joint purchase of a mobile home. Peterson and Ms. Wilson each own an undivided one-half interest in the mobile home as co-tenants. Peterson continues to occupy the mobile home as her primary residence. Ms. Wilson has not filed a bankruptcy proceeding.

p.  Peterson and Ms. Wilson financed $33,975.00 for a period of 360 months at 8.5% interest, with payments to begin on April 15, 1999, to purchase the mobile home.

q.  Green Tree holds a valid first lien security interest on the subject mobile home.

r.  The Contract expressly states that it is a simple interest contract.

4

s. Under the provisions of the Contract, simple interest continues to accrue on the outstanding unpaid principal balance at the contract rate until a payment is received by Green Tree.

t. Peterson filed her Chapter 13 bankruptcy petition on March 24, 2009.

u. Green Tree filed its proof of claim in Peterson's bankruptcy case on March 28, 2009 [Claim No. 1-1] and its amended proof of claim on April 29, 2009 [Claim No. 1-2].

v. A true and correct copy of the Contract was attached to the proof of claim.

w. Neither Peterson nor the Trustee filed any objection to Green Tree's proof of claim or to its amended proof of claim.

x. On May 27, 2009, the Court entered its order [Bankr. Dkt. #21] confirming Peterson's plan.

y. The confirmed plan provided for monthly payments to Green Tree in the amount of $353.89 (including escrow) and $44.09 in arrears, both of which were to be paid by the Trustee through the plan.

z. Prior to the filing of the adversary complaint by Peterson, Green Tree made the internal business decision to voluntarily implement the Reallocation Process to reallocate payments made by trustees to Green Tree on simple interest accounts for its Mississippi customers during their Chapter 13 bankruptcy plan periods for all trustee pay cases after June 23, 2003.

aa. As part of the Reallocation Process, Green Tree reversed each monthly maintenance payment made by the Trustee to Green Tree on Peterson's account during the bankruptcy plan period, and credited each payment as if it had been received by Green Tree on the contractual due date, rather than the date on which the payment was made by Peterson or her employer, as applicable to the Trustee or the date the payment was received by Green Tree from the Trustee.

bb. There are no issues or claims regarding escrow, insurance, lender placed insurance or similar matters.

cc. Peterson is not obligated to reimburse her attorneys out of her personal funds for any attorney's fees, expenses or costs under the provisions of her employment contract with them.

5

<u>Sholar Adversary Proceeding</u>:

a. Sholar is indebted to Green Tree under a Manufactured Home Retail Installment Contract & Security Agreement dated August 20, 1999 (the "Contract"), reflecting a debt in the principal amount of $40,878.00. The amount financed was $37,850.00. A manufactured home, rather than real property, stood as security for the debt.

b. The Contract provided for an interest rate of 11.0% (12.07% APR) per annum and required Ms. Sholar to make 300 payments of $400.65 per month as the contractual amount of the Contract.

c. The Contract provided for the payment of daily simple interest on the outstanding unpaid principal balance of the loan.

d. Sholar filed her Chapter 13 Voluntary Petition on August 9, 2005.

e. Green Tree is a secured creditor in Ms. Sholar's Chapter 13 bankruptcy.

f. The meeting of creditors in Ms. Sholar's bankruptcy was held on November 21, 2005.

g. Ms. Sholar's Chapter 13 plan was confirmed by the Court on December 12, 2005. The plan provided for post-petition monthly mortgage payments in the amount of $473.45, including escrow, and pre-petition arrearage monthly payments in the amount of $30.06 to Green Tree.

h. Pursuant to her confirmed plan, the continuing monthly mortgage amounts owed to Green Tree are paid by Ms. Sholar's bankruptcy trustee, or paid "through the plan."

i. Ms. Sholar filed this adversary proceeding on August 19, 2010.

j. Green Tree segregated the amount it reported as an arrearage into a bankruptcy "bucket" and pre-petition arrearage payments made by Ms. Sholar's Trustee were credited to the arrearage.

k. During part of Ms. Sholar's Chapter 13 bankruptcy proceeding, Green Tree charged Ms. Sholar's account simple interest based on the date that it received post-petition mortgage payments from the Trustee, rather than the date that such payments were contractually due.

l.  Green Tree voluntarily instituted a payment reversal and reallocation process (the "Reallocation Process") for accounts in bankruptcy in the State of Mississippi.

m.  After reversing from the payment history all post-petition mortgage payments made by Ms. Sholar's Trustee, Green Tree re-applied those payments as if received on the contractual due date under Ms. Sholar's loan, as reflected in the payment history.

n.  Sholar is an adult resident citizen of Marshall County, Mississippi.

o.  On August 20, 1999, Sholar entered into a Manufactured Home Retail Installment Contract and Security Agreement (the "RIC" or the "Contract") with Green Tree to purchase a mobile home to be used by Sholar as her primary residence.

p.  Sholar financed $37,850.00 for a period of 300 months at 11.0% (12.07% APR) interest, reflecting a debt in the principal amount of $40,878.00, with payments to begin on October 15, 1999, to purchase the mobile home.

q.  Green Tree holds a valid first lien security interest on the subject mobile home.

r.  The Contract expressly states that it is a simple interest contract.

s.  The Contract provides that simple interest continues to accrue on the principal balance outstanding from time to time at the contract rate until paid.

t.  Sholar filed her Chapter 13 bankruptcy petition on August 9, 2005.

u.  Green Tree filed its proof of claim in Sholar's bankruptcy case on September 2, 2005 [Claim No. 1-1], its first amended proof of claim on September 26, 2005 [Claim No. 2-1], and its second amended proof of claim on October 11, 2005 [Claim No. 7-1].

v.  A true and correct copy of the Contract was attached to the proof of claim and the first and second amended proofs of claim.

w.  Neither Sholar nor the Trustee filed any objection to Green Tree's proof of claim or to its amended proofs of claim.

x.  On December 12, 2005, the Court entered its order [Bankr. Dkt. #17] confirming Sholar's plan.

y.  The confirmed plan provided for monthly payments to Green Tree in the amount of $473.45 (including escrow) and $30.06 in arrears, both of which were to be paid by the Trustee through the plan.

z.  Prior to the filing of the adversary complaint by the Trustee, Green Tree made the internal business decision to voluntarily implement the Reallocation Process to reallocate payments made by trustees to Green Tree on simple interest accounts for its Mississippi customers during their Chapter 13 bankruptcy plan periods for all trustee pay cases after June 23, 2003.

aa.  As part of the Reallocation Process, Green Tree reversed each monthly maintenance payment made by the Trustee to Green Tree on Sholar's account during the bankruptcy plan period, and credited each payment as if it had been received by Green Tree on the contractual due date, rather than the date on which the payment was made by Sholar or her employer, as applicable, to the Trustee or the date the payment was received by Green Tree from the Trustee.

bb.  There are no issues or claims regarding escrow, insurance, lender placed insurance or similar matters.

cc.  Sholar is not obligated to reimburse her attorneys out of her personal funds for any attorney's fees, expenses or costs under the provisions of her employment contract with them.

IV.

As set forth in the stipulations, both debtors entered into simple interest loan transactions with Green Tree. The contracts provided for a daily accrual of interest at the specified contract rates on the outstanding balance of principal existing under the loans. Under a simple interest contract, the payments made by the borrower are applied first to accrued interest, as well as, other charges that are incidental to the debt, and thereafter to the principal balance. The interest is not compounded and the loan is not calculated on a monthly actuarial basis like most long term residential mortgage loans. A simple interest loan transaction is legally permissible in the State of Mississippi, as well as, most other states.

8

Initially, Green Tree applied the monthly payments that were submitted by the debtors' Chapter 13 trustees when the payments were actually received by Green Tree. In keeping with the terms of the simple interest contracts, these payments were first applied to the accrued interest and other incidental charges, then to the principal balance. In the opinion of the court, Green Tree was legally permitted to apply and allocate the payments in this manner.

The interest rates and the payment terms were not modified by the orders confirming the debtors' Chapter 13 plans or any other orders entered in their cases. Pursuant to § 1322(b)(5) of the Bankruptcy Code[1], both debtors proposed in their plans to cure the existing pre-petition defaults while maintaining their regular monthly payments in the contract amounts following confirmation.

A computer generated document maintained by Green Tree called the "web payment history" reflects the amounts, the dates of receipt, and the application of all payments received from the trustees. (See Peterson Exhibit P-3 and Sholar Exhibit P-1.) In most Chapter 13 bankruptcy cases, there is an initial delay before the stream of payments commences to secured creditors. When this occurs, daily interest on simple interest loan contracts will continue to accrue at no fault of the debtors or the creditors. This is a systemic issue which must be taken into account by the Chapter 13 debtors, their attorneys, and the Chapter 13 trustees. If this is not appropriately addressed, the interest accrual can become more excessive than anticipated. This is comparable to what occurs when debtors fail to pay monthly installments to the trustee following confirmation. When a payment is missed or late, more of the payment, when received, is applied

---

[1] All Code sections mentioned hereinafter in this opinion should be considered as sections of the United States Bankruptcy Code unless specifically noted otherwise.

9

toward interest and progressively less is applied to principal. Regardless, when this occurs, the secured creditor is not required to forfeit interest that is earned and accrued pursuant to the contractual terms.

V.

Green Tree has previously been involved in litigation in this court regarding its loan servicing practices. *See Hamilton v. Green Tree Servicing, LLC (In re Hamilton)*, 416 B.R. 549 (Bankr. N.D. Miss. 2009) and *Murry v. Green Tree Servicing, LLC (In re Murry)*, 416 B.R. 290 (Bankr. N.D. Miss. 2009). Although no decision on the merits was rendered in either *Hamilton* or *Murry*, because of the proceedings, Green Tree determined to voluntarily implement a "Reallocation Process" to reallocate payments made by Chapter 13 trustees on simple interest contracts applicable to its Mississippi customers for cases filed subsequent to June 23, 2003. As a part of the Reallocation Process, Green Tree reversed each monthly maintenance payment made by the trustees to Green Tree and credited each payment as if it had been received by Green Tree on the contractual due date, rather than the date on which the payment was actually received from the trustee. Without contradiction, this process provided a financial benefit to both Peterson and Sholar.

The Reallocation Process was initiated in December, 2009, before Peterson and Sholar filed their adversary proceedings. Prior to reallocation, the payments that were remitted to Green Tree by Peterson's and Sholar's trustees were applied and allocated on the date received. Following reallocation, these payments were applied as if they had been received by Green Tree on the contractual due date. Although this was clearly a remedial procedure, it eliminated the debtors' reason to complain.

At trial, the debtors argued that Green Tree, prior to the Reallocation Process, should have applied their payments on the date that they paid funds to the trustees. The court, however, finds no merit in this argument for the following reasons:

a. Green Tree, which services over one million loans in the continental United States, was acting within its legal rights to apply the payments when the funds were received by Green Tree from the trustees. As noted earlier, Green Tree was not required to forfeit interest lawfully earned.

b. Payments from debtors to trustees occur at varying intervals, i.e., weekly, bi-weekly, or monthly.

c. The payments can vary in amounts and they often include funds that would be attributable to other claims in the debtors' bankruptcy cases.

Considering the variable described in b. and c., the court perceives that it would be practically impossible to apply and allocate payments on the dates that the funds were paid by debtors to the trustees.

## VI.

Following the presentation of proof, the debtors' attorneys candidly acknowledged that there was no evidence in either of these adversary proceedings that Green Tree had excluded uncollected pre-petition interest (ENC) from its filed proof of claim and had attempted to collect this interest from the debtors' post-confirmation regular monthly maintenance payments. Consequently, that part of the debtors' complaints is not well taken and will be dismissed.

The trial testimony has convinced this court that even though a simple interest contract does not "fit in" ideally with the early administration of a Chapter 13 bankruptcy case, there was nothing illegal or inherently wrong with Green Tree's practice of applying payments to the debtors' accounts when they were actually received from the Chapter 13 trustees. This practice,

of course, has been adjusted through the Reallocation Process to the effect that the payments are now being applied as if they were received on the contractual due date. This has obviously provided a significant financial benefit to the debtors. Added to this are the following uncontradicted factors which were adduced through the evidence presented:

    a.    No appraisal fees were assessed during the bankruptcy cases.

    b.    No interest was charged on the pre-petition arrearages that were cured.

    c.    No late fees were assessed.

    d.    No inspection fees were charged.

    e.    The debtors paid only the amounts that were proposed in their confirmed Chapter 13 plans and no more.

    f.    As of the time of the trial, there were no serious delinquencies in either Peterson's or Sholar's obligations to Green Tree.

    g.    Other than receiving payments from the Chapter 13 trustees pursuant to the confirmed plan, there were no post-petition collection activities initiated by Green Tree against these debtors.

As a result of the foregoing, the court is compelled to conclude that Green Tree did not violate the automatic stay nor any other provisions of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. Consequently, the debtors are not entitled to monetary sanctions, actual damages, punitive damages, or attorney fees and costs.

## VII.

In their complaints, the debtors also sought injunctive and declaratory relief to the effect that Green Tree should be permanently enjoined from engaging in the alleged illegal acts and practices which violated the Bankruptcy Code and Rules of Bankruptcy Procedure. In addition, the debtors asserted that to the extent that Green Tree had wrongfully collected funds pursuant to

its illegal actions that they were entitled to an order requiring Green Tree to turn over all the said funds collected plus interest. The proof presented does not support these requests, particularly that Green Tree had wrongfully collected funds pursuant to some perceived illegal actions.

Because of the implementation of the Reallocation Process, the request for injunctive relief was modified by the debtors to request an order enjoining Green Tree from "unwinding" the Reallocation Process. The uncontradicted testimony at trial from Green Tree was that it had expended substantial sums of money and time to effectuate the Reallocation Process, and it had no intention whatsoever of reversing its effects.

In the Fifth Circuit, a four-part test has been articulated for a party to meet when seeking preliminary or permanent injunctive relief, to-wit:

1. A substantial likelihood that the plaintiff will prevail on the merits.

2. A substantial threat that irreparable injury will result if the injunction is not granted.

3. The threatened injury to the plaintiff outweighs the threatened harm to the defendant.

4. Granting the injunctive relief will not disserve the public interest.

See *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250 (5th Cir. 2009), *Texas Democratic Party v. Benkiser*, 459 F.3d 582 (5th Cir. 2006), and *Miss. Power and Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir. 1985).

The debtors have not met the requirements necessary for the court to issue an injunction against Green Tree. Green Tree's testimony was abundantly clear that it had absolutely no intention of reversing the implementation of the Reallocation Process. The debtors have not prevailed on the merits of their allegations, nor have they shown a likelihood that they will be

13

irreparably harmed. Indeed, the proof was completely to the contrary. As such, the request for injunctive and equitable relief is not well taken, and it will be overruled.

An order, consistent with this opinion, will be entered contemporaneously herewith.

This the 19th day of September, 2012.

*/s/ David W. Houston, III*
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE